## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JANET BEPPLER, as Administrator of the Estate of Jeffrey Eastman, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 22-cv-3052-SEM-EIL |
| WEXFORD HEALTH SOURCES, INC., et al., | ) ) | Hon. Sue E. Myerscough, Judge |
| Defendants. | ) | Hon. Eric I. Long, Mag. Judge |

### PLAINTIFF'S REPLY IN SUPPORT OF HER
### MOTION FOR HIPAA-QUALIFIED PROTECTIVE ORDER

The Defendants ("Wexford") object to Plaintiff's Motion for entry of a HIPAA-Qualified Protective Order that covers third parties. Dkt. 47. Plaintiff's Motion only seeks to make disclosure of third-party records *lawful* and to address Defendants' objections to such discovery based on the form of the protective order in place. Defendants' baseless accusation that Plaintiff seeks to invade the privacy of "thousands of unnamed third parties" warrants this Reply. *Id*. at 1.

Plaintiff's Motion asks this Court to enter the HIPAA-Qualified Protective Order, a necessary condition for the parties to exchange discovery containing third-party medical information, *i.e.*, discovery on other prisoners facing related problems and requiring medical treatment by Wexford. As Plaintiff stated in her Motion, discovery of third-party medical information is crucial to Plaintiff's *Monell* claim, a point the Seventh Circuit has emphasized repeatedly. *See, e.g., Dean v. Wexford Health Sources*, 18 F.4th 214, 240 (7th Cir. 2021) ("[W]e have repeatedly rejected *Monell* claims that rest on the plaintiff's individualized experience without evidence of other constitutional violations.").

HIPAA expressly provides for the entry of a protective order of the type that Plaintiff has proposed. 45 C.F.R. § 164.512(e). Entry of that order does not decide the scope of discovery into

third-party medical records. It simply makes that discovery possible as a matter of federal law. The order thus will not abridge Wexford's ability to resist discovery, other than by preventing reliance on HIPAA as the hurdle to production. *Reed v. Wexford Health Sources, Inc.*, 2021 WL 5578076, at *3 (S.D. Ill. Oct. 19, 2021) (noting that a similar HIPAA-Qualified Protective Order left defendants "free to object to [p]laintiffs' discovery requests on other grounds.")

In its Response brief, Wexford newly cites additional privacy statutes, including the Illinois Medical Patient Rights Act (410 ILCS 50/3(d)) ("IMSA"), and Illinois Physician-Patient Privilege (735 ILCS 5/8/802). Dkt. 47 at 5. However, these statutes are inapplicable in lawsuits that raise a federal question. *See Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004) ("Illinois privilege does not govern in federal-question suits."). And district courts throughout this Circuit have addressed and rejected requests by Wexford and similar corporations to create new privileges under federal law based on these state-law privileges in 42 U.S.C. § 1983 cases like this one. *See, e.g., Green v. Meeks*, 2023 WL 1447817, at *3 (S.D. Ill. Feb. 1, 2023) ("The [c]ourt will not allow state law privilege to block the production of relevant evidence in this case."); *McLaughlin v. Tilden*, 2015 WL 888921, at *2 (C.D. Ill. Feb. 27, 2015).

Defendants fail to provide any case law in which HIPAA-Qualified Protective Orders were denied, despite the ample cases cited by Plaintiff approving such Orders. *See Johnson-Barker v. Wexford*, No. 21-cv-1234-JES-EIL (C.D. Ill.); *McCaffrey v. McAtee*, No. 21-cv-3029-SLD-JEH (C.D. Ill.); *Wiley v. Young*, No. 21-cv-0599-JPG-RJD (S.D. Ill.); *Jackson v. Wexford*, No. 20-cv-0900-DWD (S.D. Ill.); *Green v. Meeks*, No. 20-cv-0463-SPM (S.D. Ill.); *Gay v. Baldwin*, No. 19-cv-1133-SEM-EIL (C.D. Ill.); *Reed v. Wexford*, No. 20-cv-1139-SPM (S.D. Ill.).

Plaintiff and Wexford both have moved for entry of HIPAA-Qualified Protective Orders, ***but only Plaintiff's proposed Order covers the privacy interests of third parties***—which is the

entire point of such an order in a case like this, and the reason they are routinely granted over Wexford's persistent objections.

1. **Redacted Records are Insufficient to Prove Plaintiff's *Monell* Claims**

Wexford argues that Plaintiff may use alternative methods of proof besides medical records to substantiate her *Monell* claims. However, the availability of *other* forms of discovery does not bar Plaintiff from accessing the best and most efficient evidence, *i.e.*, unredacted medical records of other incarcerated people.

Wexford also argues that redacted forms of information are sufficient. But it fails to cite supporting precedent for that bare assertion and does not respond to Plaintiff's arguments about why redacted records are practically useless in this case. Dkt. 45 at 13. In *Arsberry v. Wexford*, which Wexford cites in its Response, the plaintiff sought the number of hospital admissions, not the health information of third-party individuals.[1] 2021 WL 5232733, at *5, *8 (N.D. Ill. Nov. 10, 2021). The court did not address whether redactions were proper in a case like this one, where identifiers are necessary to obtain the relevant discovery from multiple entities.

As discussed in Plaintiff's Motion, anonymized information is insufficient to prove her *Monell* claims. Dkt. 45 at 13. The unredacted information is relevant to Plaintiff's *Monell* claims because "[t]he names of other inmates may lead to admissible information." *Andrews v. Sangamon Cnty.*, 2018 WL 6523186, at *1–2 (C.D. Ill. Dec. 11, 2018) (compelling production of unredacted copies of medical records). Among other reasons, discovery in these cases usually requires obtaining medical records and related documents from *both* the IDOC and Wexford. Without identifiers, there is no way for Plaintiff to know which of the various anonymized documents

---

[1] The court compelled Wexford to produce those records and separately ordered the parties to submit a third-party HIPAA-Qualified Protective Order, but noted that all parties agreed to redactions of any identifiers even with a qualified protective order in place.

obtained from the IDOC relate to which of the various anonymized documents obtained from Wexford.[2] And without being able to match the various IDOC and Wexford documents, Plaintiff is left without any ability to test whether the heavily redacted and anonymized records produced by Wexford reflect adequate care. Moreover, anonymized and redacted records frustrate efforts to link that nameless data with even with communications and/or other documents produced by Wexford—an essential step needed to make the information meaningful and usable.

To date, Wexford has not produced any third-party documentation, redacted or otherwise, since receiving Plaintiff's first set of discovery requests in October 2022. Defendants have instead delayed complete productions, citing the lack of a protective order in this case, and declined to produce any medical records to Plaintiff, including the medical records of Jeffrey Eastman, whose estate Plaintiff administrates. In correspondence to Wexford, Plaintiff has advised that Defendants cannot refuse to provide Plaintiff the personally identifiable information of the decedent himself. Ex. A, Pl.'s R. 37 Ltr. at 4 (Mar. 9, 2023) (citing 45 C.F.R. § 164.502(g)(1)). But that contention has fallen on deaf ears.

### 2.  Plaintiff's HIPAA-Qualified Protective Order Protects Privacy Interests

Next, Wexford argues that Plaintiff's Motion fails to "overcome the privacy interests of third parties in their identifiable health information." Dkt. 47 at 3. But Wexford has it backwards here—it is those privacy interests that, in part, provide the good cause for entry of Plaintiff's proposed order, which strictly limits the access, use, and possession of records. That is precisely what the court in *Gay* recognized when it entered a similar order over Wexford's objection. No. 19-cv-1133, Dkt. 147 at 3 (C.D. Ill. Dec. 6, 2021). Entry of Plaintiff's HIPAA-Qualified Protective

---

[2] This, of course, assumes that the IDOC would be willing to go along with this redaction process proposed by Wexford, which in the experience of Plaintiff's counsel, the IDOC has flatly refused (and when pushed, has instead agreed to produce records with identifiers confidentially). *See Gay v. Baldwin*, No. 19-cv-1133 (C.D. Ill.).

Order requires no sacrifice of privacy interests by the Court in allowing Plaintiff to obtain relevant medical information.

Plaintiff's proposed order provides that when PHI of third parties is obtained, it is treated confidentially, used only for purposes of this case, and kept only temporarily. Wexford should agree with these measures and has said nothing to cast doubt on their effectiveness. The Court should enter Plaintiff's proposed HIPAA-Qualified Protective Order.

Finally, Wexford continues to propose the same rejected position rather than enter into Plaintiff's proposed Protective Order, and in so doing, continues to delay discovery in this matter. This is a pattern for Wexford. *See Jackson v. Wexford Health Sources, Inc*., No. 20-cv-00900 (S.D. Ill); *Johnson-Barker v. Wexford Health Sources, Inc*., No. 21-cv-01234 (C.D. Ill.); *McCaffrey v. McAtee*, No. 21-cv-03029 (C.D. Ill.); *Wiley v. Wexford Health Sources, Inc*., No. 3:21-cv-00599 (S.D. Ill.) Plaintiff respectfully requests that the Court award Plaintiff her reasonable expenses, including attorneys' fees, incurred in bringing this disputed motion. *See* Fed. R. Civ. P.37(a)(5)(A); Dkt. 45 at 14.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion, enter Plaintiff's proposed HIPAA-Qualified Protective Order (Dkt. 45-2), deny Defendants' Motion for a HIPAA-Qualified Protective Order that does not include third parties (Dkt. 42), and award Plaintiff her reasonable attorneys' fees and costs.

Respectfully submitted,

/s/ Nabihah Maqbool
Nabihah Maqbool
Attorney for Plaintiff

Sarah Grady
Howard Kaplan
David Schmutzer
Nabihah Maqbool
KAPLAN & GRADY LLC
1953 N. Clybourn Ave., Suite 274
Chicago, Illinois 60614
(312) 852-2184
nabihah@kaplangrady.com

## CERTIFICATE OF SERVICE

I, Nabihah Maqbool, an attorney, hereby certify on March 29, 2023, I caused the foregoing to be filed using the Court's CM/ECF, which effected service on all counsel of record.

/s/ Nabihah Maqbool
Nabihah Maqbool
Attorney for Plaintiff

# Exhibit A



**Nabihah Maqbool**
Nabihah@kaplangrady.com
312 852 2184

March 9, 2023

*Via email*
Joe Rupcich
Joy Syrcle
Cassiday Schade LLP
3100 Montvale Dr.
Springfield, IL 62704
jrupcich@cassiday.com
jsyrcle@cassiday.com

> Re:   *Beppler v. Wexford Health Sources Inc., et al.*, No. 22-cv-3052 (C.D. Ill.)

Dear Counsel:

I write to request a Rule 37 conference regarding Defendants' responses to Plaintiff's discovery requests in this matter, and additional outstanding discovery issues. Please find the particular issues we would like to discuss below. On a number of these issues, **we ask for supplemental production by March 15**. Please let us know when you are available next week.

**ESI Searches**

On March 8, we provided our proposed edits to the ESI protocol, in response to the edits you sent on February 16. We are close to an agreement, but we there remain two disagreements, first, attachments must be produced alongside responsive emails, and second, spreadsheets must be produced in their native format. As we set out in our March 8 email, the positions Defendants have taken on both are contrary to federal practice and this Circuit's precedent.

With regard to producing email attachments, Federal Rule of Civil Procedure 34(b)(2)(E)(i) states "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Accordingly, attachments must accompany their parent emails, and a failure to do so has resulted in sanctions for the party that failed to produce such attachments. *See GJMS, LLC v. Hamstra Builders, Inc.*, No. 2:18-CV-135-JTM-JEM, 2019 WL 7763994, at \*3 (N.D. Ind. Oct. 29, 2019), *report and recommendation adopted,* No. 2:18 CV 135, 2020 WL 474846 (N.D. Ind. Jan. 29, 2020) ("Defendants to pay the fees and expenses incurred by GJMS as a result of the motion practice.").

Second, Wexford's practice of refusing to produce spreadsheets in their native formats has already been rejected by the Northern District of Illinois, and Wexford itself was sanctioned for failing to do so in *Haywood v. Wexford Health Sources, Inc,* No. 16 CV 3566, 2021 WL 2254968

(N.D. Ill. June 3, 2021). The court found the pdf-version of spreadsheets produced by Wexford to not be reasonably usable, and Wexford's justification for withholding the native formats to be unavailing.

In light of the authorities we have provided, **we ask you to provide your position on these remaining issues regarding the ESI protocol by March 15**. If your position has not changed, it may be necessary to brief the court about this impasse.

**Protective Order**

Upon the court's entry of Plaintiff's HIPAA-qualified protective order, please produce those documents withheld on the basis of HIPAA, including the documents Defendants have specifically identified they are withholding pursuant to the lack of a third-party HIPAA-qualified protective order in Defendants' responses to Requests for Production No. 9, 10, 11, 12, and 15. We further remind you that you have no basis to withhold documents related to Mr. Eastman, as we represent the administrator of Mr. Eastman's estate. **By March 15, please clarify if you have withheld documents regarding Mr. Eastman on the basis of HIPAA or any other state or federal confidentiality statute.**

**Plaintiff's First Set of Requests for Production**

Request Nos. 1 and 3

In response to our requests for documents, communications, and other evidence "that relate to, support, and/or rebut" allegations or claims in Plaintiff's Complaint or Defendants' Affirmative Defenses or Answer, you replied that "all documents" exchanged in discovery "rebut the Plaintiff's allegations and claims" and "support [Defendants'] affirmative responses." These responses are improper. To the extent Defendants rely upon any document that relates to, supports and/or rebuts allegations or claims in Plaintiff's complaint or Defendants' affirmative Defenses or Answer, you must specifically identify those documents by their Bates range.

In addition, please confirm that you have not withheld (and will not withhold) documents that you intend to use at trial, including for impeachment purposes, pursuant to these requests.

Request No. 2

If any witness statements have been withheld on the basis of privilege, **please identify these documents in a privilege log by March 15.** We will agree to exempt from any privilege log statements made by Defendants to their litigation counsel in this case (i.e., you or your office).

Letter to Counsel
March 9, 2023
Page 3 of 13

Request Nos. 4, 6, and 7

You have objected to the use of the phrase "all documents." Yet that phrase is precisely the same phrase that the Wexford Defendants have used in their own requests for production to Plaintiff. Accordingly, we define that phrase as the Wexford Defendants use it in their requests for production, and we assume that you accordingly will withdraw your objection to use of that phrase. If you do not withdraw your objections, please be prepared to discuss the basis (given Defendants' similar use of that phrase).

Pursuant to Rule 34, Defendants must produce copies of responsive documents in their custody, control, or possession, even if those documents may also be in the custody, control, or possession of the Illinois Department of Corrections ("IDOC"). Please confirm that you are not withholding any responsive documents in Defendants' possession, custody, or control, and that you will produce responsive documents if and when Defendants obtain possession, custody, or control of them.

Request No. 5

In your response you stated that you were conducting a search for additional responsive documents. To date, we have received no supplemental production of responsive documents. We remind you that Defendants' may not unilaterally limit the scope of discovery to April 2019; Plaintiff's Instruction 10 states that the relevant time period for discovery requests is January 2019 through the present and we expect your search to be inclusive of these dates.

Please also note that separate and apart from any ESI search, Defendants have a responsibility to conduct a reasonable investigation into the existence of responsive documents (including, for example, Mr. Eastman's UM file). **Please produce responsive documents by March 15**, and confirm that Defendants are not withholding any responsive documents in their possession, custody, or control.

Request No. 8

In your response you stated that you would produce the Wexford Medical Guidelines for Cardiology that was in place in 2021 after the entry of a protective order, which has since been entered—please produce the Medical Guidelines in their entirety (i.e., as they are maintained in the ordinary course of Wexford's business). We remind you that Defendants may not unilaterally limit the scope of discovery; Plaintiff's instruction 10 states that the relevant time period for discovery requests is January 2019 through the present. **By March 15, please identify and**

**produce additional relevant documents from January 2019 to present that are responsive, including earlier iterations or versions of documents already identified.**

Please also be prepared to discuss what other types of responsive documents Defendants possess but have not produced, including training documents related to Wexford's policies for treating prisoners with cardiovascular diseases, instruction to Wexford nursing staff (including treatment protocols) related to cardiovascular complaints.

Request No. 11

In your response you stated that you were conducting a search for responsive documents. To date, we have received no production of responsive documents. We remind you that Defendants' may not unilaterally limit the scope of discovery to April 2019; Plaintiff's Instruction 10 states that the relevant time period for discovery requests is January 2019 through the present and we expect your search to be inclusive of these dates. **Please produce responsive documents by March 15.**

Request No. 12

In your response you stated that you would produce responsive documents after the entry of a HIPAA-qualified protective order. But Defendants cannot refuse to provide Plaintiff (the administrator the decedent's estate) PHI of the decedent himself. 45 C.F.R. § 164.502(g)(1). **By March 15, please confirm that you will produce all non-privileged responsive documents, and identify all documents you have withheld on the basis of privilege in a privilege log.**

Request No. 13

You have objected to the use of the phrase "all documents." Yet that phrase is precisely the same phrase that the Wexford Defendants have used in their own requests for production to Plaintiff. Accordingly, we define that phrase as the Wexford Defendants use it in their requests for production, and we assume that you accordingly will withdraw your objection to use of that phrase. If you do not withdraw your objections, please be prepared to discuss the basis (given Defendants' similar use of that phrase).

In your response you stated that you conducted a search for additional responsive documents. To date, we have received no production of responsive documents. We remind you that Defendants' may not unilaterally limit the scope of discovery to April 2019; Plaintiff's Instruction 10 states that the relevant time period for discovery requests is January 2019 through the present and we expect your search to be inclusive of these dates. **By March 15, please produce responsive materials and identify documents you have withheld on the basis of privilege in a privilege log.** We will agree to exempt from any privilege log documents reflecting

communications between Defendants and their litigation counsel in this case (i.e., you or your office).

### Request Nos. 14, 15, 23, and 35

Rule 34(b)(2)(C) requires a party asserting an objection to a request for production to expressly "state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. 34(b)(2)(C); *Estate of Swayzer v. Clarke*, 2017 WL 6327555, at *3 (E.D. Wis. Dec. 11, 2017) (a party who withholds responsive materials pursuant to an objection without informing the other side "faces sanctions for failing to comply with Rule 34(b)(2)(C)"). To the extent that Defendants have failed to specify that documents are being withheld pursuant to objection, they have forfeited those objections.

Please confirm that you are not withholding responsive information based on your objections and will supplement if you have further responsive information.

### Request Nos. 16 and 17

In response to this request, Defendants have primarily pointed Plaintiff to Administrative and Institutional Directives created by the IDOC, which they then contend are "available through the IDOC." First, and as stated above, the fact that the IDOC maintains possession, custody, or control of the various ADs and IDs Defendants have identified do not relieve Defendants of their responsibilities under Rule 34 from producing them (as there can be no denying that Defendants have possession, custody, or control of policies they contend dictate their conduct and the conduct of their employees). The documents identified should be produced immediately. Second, Defendants' response further identified documents you stated that you would produce documents after the entry of a protective order, which has since been entered. Those documents should be similarly produced immediately.

Third, Defendants have failed to identify several categories of responsive documents that we know Wexford maintains, including, for example, training documents regarding the categories set out in Request No. 16, Wexford's global quality assurance policies/guidelines, and global operations policies/guidelines, among others. Please confirm that you will produce these additional documents and be prepared to discuss what, if any, reasonable investigation Defendants conducted into the existence of responsive documents that omitted the categories of documents identified here (none of which were identified as documents being withheld pursuant to privilege).

Finally, regarding Request No. 17, you have raised objections (but made no indication that Defendants have withheld any documents pursuant to those objections as required by Rule 34(b)(2)(C)) and pointed Plaintiff to the IDOC. For the reasons set out above, this answer is not

sufficient. Please be prepared to discuss what responsive documents exist, and when Plaintiff can expect their production.

<u>Request No. 18</u>

In response to this request, Defendants have raised objections to the scope and wording of the request, as well as asserting several privileges. If any documents have been withheld on the basis of privilege, **please identify these documents in a privilege log by March 15.**

Defendants' remaining objections are meritless. As Wexford is aware, it is contractually required to conduct CQI activities separate and apart from those performed by the IDOC, and so we know that responsive documents exist. Although Defendants contend that the limitation does not match the Complaint, a comparison of the Complaint alongside the categories described in Request No. 16 show that this is not the case. To the contrary, the categories of quality assurance documents in Defendants' possession, custody, or control that are responsive to this request are centrally relevant to Plaintiff's *Monell* claim against Wexford. Finally, Defendants have objected about the use of policymakers in this request. For the avoidance of doubt, Plaintiff means in this request to refer to any Wexford employee who has responsibility for monitoring, implementing, and/or changing policies and practices of Wexford staff, including staff at Taylorville. With this clarification, Defendants should produce all responsive documents. Please confirm that you will do so and be prepared to provide a timeline for this production.

<u>Request No. 19</u>

In your response you stated that you would produce responsive documents after the entry of a protective order, which has since been entered. **Please produce responsive documents by March 15**, and confirm that Defendants are not withholding any other responsive documents in their possession, custody, or control.

<u>Request No. 20</u>

Similar to Request No. 18 above, this request seeks documents that include quality assurance documents. Defendants have raised boilerplate documents to overbreadth and proportionality without explanation, which is tantamount to no objection at all. *E.g., Stagger v. Experian Info. Solutions, Inc.*, 2021 WL 5299791, at *5 (N.D. Ill. Nov. 15, 2021). Defendants also object that the documents sought are confidential or proprietary, but this objection is resolved by

the Court's entry of the confidentiality order. **Please produce responsive documents by March 15.**

Request No. 21

It is unclear whether you intend to withhold documents on the basis of your objections, which are insufficient as a basis to withhold discovery. To be clear, this request seeks the annual report that is submitted to the IDOC's Office of Health Services (and any draft reports), as well as any other annual reports regarding healthcare at Taylorville. **Please produce responsive documents by March 15.**

Request No. 22

Defendants' objections and responses to this request indicate that they (presumably, primarily Wexford) are withholding responsive documents. This request seeks documents in Wexford's possession, custody, or control related to the involvement of Bantry Group (Wexford's parent corporation) in the provision of healthcare—a responsibility Wexford has taken on pursuant to contract. These documents are centrally relevant to the question of Wexford's deliberate indifference. Defendants have objected to this request as seeking confidential, proprietary documents, but these objections are resolved by entry of Defendants' proposed confidentiality order. If you contend that the request requires narrowing based on the burden it imposes, please be prepared to discuss in detail what burden is imposed.

Request No. 24 and 28

In your response you objected to producing documents on the basis of scope and relevance. However, Wexford's budgetary documents are centrally relevant to Plaintiff's claims because Wexford includes in its budget costs that it is required to pay to outside care providers for medical care. You have provided no information regarding the burden Wexford would bear from producing responsive documents and given their relevance and the lack of an alternative source from which to obtain them, they should be produced. **Please supplement your response by March 15.**

Request No. 25

In your response you stated that you would produce timecards from April 1 through April 21, 2021. To date, we have received no production of responsive documents. Second, Defendants' may not unilaterally limit the scope of discovery to certain days of April 2021; Request 25 is for all of 2021 and we expect the produced documents to be inclusive of these dates, particularly in

light of the nonexistent burden required to do so. **Please produce responsive documents by March 15.**

Request No. 26

In response to this request, Defendants have pointed Plaintiff to Mr. Eastman's medical records. But Plaintiff's request is not limited to those members of the medical staff that specifically saw Mr. Eastman, and instead seeks documents reflecting all medical staff who worked at Taylorville during the requested time frame. Documents like schedules, and staff rosters are therefore responsive and should be produced. Plaintiff is willing to discuss a compromise regarding the time frame but fully responsive documents should be produced. Please be prepared to discuss this request during our Rule 37 conference.

Request No. 27

Please confirm there are no other records in your custody, control, or possession that show contact between Mr. Eastman and medical or correctional staff in 2021, besides the IDOC medical records identified by Defendant.

Request Nos. 29 and 30

In your response you refused to provide documents sufficient to show the net worth of Individual Defendants. The Seventh Circuit has held that a defendant's financial condition is a relevant consideration regarding punitive damages, even if the defendant does not expressly assert an inability-to-pay defense. *See*, e.g., Seventh Circuit Pattern Jury Instr., Intr. No. 3.13. We ask if you have considered supplementing your response and produce relevant documents.

Request No. 31

In your response you stated that an investigation for documents was ongoing. To date, we have received no production of responsive documents. Please confirm that you are not withholding any responsive documents or materials, and that you will provide responsive documents or materials if and when Defendants come into possession, custody, or control of them.

Request No. 32

In your response you stated that you would produce personnel and credentialing files for individual defendants upon the entry of a protective order. To date, we have received no production of responsive documents. In light of the protective order entered in this case, **please produce these documents by March 15.**

Letter to Counsel
March 9, 2023
Page 9 of 13

Please also confirm that Defendants are not withholding any documents responsive to this request, and that they have searched for responsive documents that exist beyond the "personnel and credentialing files" as you use that term. (As you know, for example, several documents have been produced in other cases regarding termination of Wexford employees and/or statewide stop orders of current and former employees that did not appear in those employees' "personnel files" as Wexford apparently use that term.)

Request No. 33

Please confirm that you are not withholding responsive information based on your objections and will supplement your production if and when Defendants come in possession, custody, or control of further responsive documents.

Request No. 34

In your response to our request for "full copies of any insurance policies, contracts, or indemnification agreements," you stated you would provide "applicable Declarations." However, Federal Rule 26(a)(1) requires that all potentially applicable insurance policies be produced in its entirety. **Please produce the entirety of all potentially applicable insurance policies by March 15.**

Request No. 36

Please confirm that at the time of Defendants' Rule 26(a)(2) disclosure deadline, you will produce all non-privileged responsive documents.

Request No. 37

Please confirm that you have not withheld (and will not withhold) documents that you intend to use at trial, including for impeachment purposes, pursuant to these requests.

Request No. 38

Please produce any additional Documents and Communications that relate to your responses and Plaintiff's interrogatories since November 17, 2022, or confirm that none are in your possession.

Letter to Counsel
March 9, 2023
Page 10 of 13

**Plaintiff's First Set of Interrogatories**

We served interrogatories upon all Defendants on December 30, 2022. We received interrogatory responses from Wexford on February 10. You requested and we agreed to an extension to receive individual Defendant responses by February 17. On February 17, we received interrogatory responses from only Defendant Duncan, and we agreed to one final extension of February 24 to receive interrogatory responses from all remaining Defendants. On February 24, we received interrogatory responses from only Defendant Myers. To date, we have not received responses from Defendants Braun, Davis, Mansfield, and Martz. **Please provide all remaining interrogatory responses by March 15.**

Interrogatory No. 1 (Wexford, Duncan, and Myer)

In your responses, you stated that investigation is ongoing. **Please let us know the results of your investigation by March 15.**

Interrogatory No. 3 (Wexford)

You have not explained why this interrogatory is burdensome. It is likely Wexford already maintains this information in an organized fashion. You have also objected to this interrogatory based on a purported equality of access. But this is simply not the case—particularly for Complaints that are not litigation and litigation that is filed in state court. Please supplement Wexford's response to answer the interrogatory in full.

Interrogatory No. 3 (Duncan and Myer)

You have provided incomplete responses to this interrogatory. **By March 15, please provide a detailed description of the nature of each Complaint listed, how each Complaint was resolved, and whether discipline was imposed in connection with each Complaint.**

Interrogatory No. 4 (Wexford)

In your response, you stated that investigation is ongoing. You indicated that you have produced documents responsive to this request based solely on an ESI search for Plaintiff's last name. That is insufficient as it does not cover the contours of this request. As you know, you have a responsibility to conduct a reasonable investigation into the existence of responsive information. Please confirm you are not withholding additional information on the basis of your objections and be prepared to talk about the results and contents of your investigation.

Letter to Counsel
March 9, 2023
Page 11 of 13

Interrogatory No. 4 (Duncan and Myer)

In your response, you stated that investigation is ongoing. You have a responsibility to conduct a reasonable investigation into the existence of responsive information. Please be prepared to talk about the results and contents of your investigation.

Interrogatory No. 5 (Wexford)

Please inform us whether you are withholding information on the basis of your objections. In addition, please explain how the information requested in this interrogatory is protected from disclosure under the work-product doctrine.

Interrogatory Nos. 5, 9, and 11 (Duncan and Myer)

Please confirm you have not withheld any information subject to your objections.

Interrogatory No. 6 (Wexford, Duncan, and Myer)

This interrogatory appropriately seeks Defendants' position regarding the adequacy of Mr. Eastman's care, and we are entitled to a response. **Please supplement your response by March 15.**

Interrogatory No. 7 (Wexford, Duncan, and Myer)

Please confirm you have not withheld any information subject to your objections. Please also be prepared to discuss what reasonable investigation that you conducted to respond to this interrogatory.

Interrogatory No. 8 (Wexford)

In your response you objected to answering on the basis of scope and relevance. However, Wexford's finances are centrally relevant to Plaintiff's claims because Wexford calculates in its budget the costs that it is required to pay to outside care providers for medical care. You have provided no information regarding the burden Wexford would bear from answering, and given the relevance and the lack of an alternative source from which to obtain information, you must provide responsive information. **Please supplement your response by March 15.**

Interrogatory No. 8 (Duncan and Myer)

In your response, you objected to providing a response. The Seventh Circuit has held that a defendant's financial condition is a relevant consideration regarding punitive damages, even if

Letter to Counsel
March 9, 2023
Page 12 of 13

the defendant does not expressly assert an inability-to-pay defense. *See*, e.g., Seventh Circuit Pattern Jury Instr., Intr. No. 3.13. **Please supplement your responses by March 15.**

> Interrogatory No. 9 (Wexford)

You have stated that Wexford does not form medical opinions. However, Wexford has been paid billions of dollars by states across the country precisely for their ability to form medical opinions and administer the medical care system for the Illinois Department of Corrections. To obtain these 10-figure sums, Wexford routinely touts its ability to make sound medical decisions and opinions. As such, it is patently inappropriate for Wexford to take the position that it cannot make medical opinions. **Please provide a supplemented response with the requested information by March 15.**

> Interrogatory Nos. 10 and 13 (Wexford)

Please confirm you have not withheld responsive information subject to your objections.

> Interrogatory No. 10 (Duncan)

**By March 15, please provide a Bates range for the records that identify your personal interactions with Mr. Eastman, and supplement your response with any interactions that occurred aside from those documented in Mr. Eastman's medical records.**

> Interrogatory No. 10 (Myer)

**By March 15, please supplement your response with any interactions that occurred aside from those documented in Mr. Eastman's medical records, or confirm that the medical records contain every interaction with Mr. Eastman.**

> Interrogatory No. 11 (Wexford)

In response to this interrogatory, Wexford has objected to the use of the word "policymaker" and refused to provide responsive information. But Plaintiff's use of the word policymaker is disjunctive to the other categories for whom information is requested. Accordingly, responsive information by Wexford is required. **By March 15, please supplement your response.**

> Interrogatory No. 12 (Wexford)

Wexford's objection to this interrogatory does not make sense, as Plaintiff does not use the word "policymaker" anywhere within it. **By March 15, please supplement your response.**

Letter to Counsel
March 9, 2023
Page 13 of 13

<u>Interrogatory Nos. 12 and 13 (Duncan and Myer)</u>

You have not provided a response to these interrogatories. Wexford necessarily has policymakers for each of its policies and/or fields of policy and Plaintiff is entitled to know who Defendants believes are those policymakers so that Plaintiff can obtain the discovery necessary to determine whether she agrees or disagrees with that position. **Please supplement your responses by March 15.**

Thank you in advance for your anticipated cooperation. I look forward to speaking with you about these issues soon.

Sincerely,

Nabihah Maqbool

Nabihah Maqbool