# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

JANET BEPPLER, as Administrator )
of the Estate of Jeffrey Eastman, )
                                )
       Plaintiff, )     Case No. 22-cv-3052-CRL-DJQ
                                )
     v. )
                                )     Hon. Colleen R. Lawless
                                )     District Judge
WEXFORD HEALTH SOURCES, INC., )
et al., )
                                )     Hon. Douglas J. Quivey
                                )     Magistrate Judge
                                )
       Defendants. )

## PLAINTIFF'S MOTION TO COMPEL ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION TO PRODUCE DOCUMENTS

Plaintiff Janet Beppler, in her personal capacity and as personal representative of the Estate of Jeffrey Eastman, by her attorneys, pursuant to Rule 45(d) of the Federal Rules of Civil Procedure, respectfully submits the following Motion to Compel Documents from the Illinois Department of Financial and Professional Regulation, and states as follows:

## INTRODUCTION

This federal civil rights lawsuit concerns the death of Jeffrey Eastman, who died of an aortic dissection while at Taylorville Correctional Center under the care of Wexford Health Sources and its employees. As part of the discovery into this case, Plaintiff issued a subpoena to the Illinois Department of Financial and Professional Regulation ("IDFPR"), which licenses and regulates organizations and licensed professions. As part of its regulatory work, IDFPR oversees the licensing and registration of physicians and nurses, including soliciting, maintaining, and investigating a repository of individual complaints against physicians. These complaints are centrally relevant to Plaintiff's claims against Defendants for their deliberate indifference to

Plaintiff's serious medical condition and Wexford's policy and practice of providing constitutionally inadequate healthcare to prisoners at the facilities in which it operates.

IDFPR objected to producing the complaints and investigative materials in its possession, asserting that they are confidential and not subject to disclosure under the Medical Practice Act, 225 ILCS 60/36(e). But it is well-established that state law privileges do not govern federal lawsuits. Accordingly, Rule 26 and 45 of the Federal Rules of Civil Procedure compel IDFPR to produce responsive materials, and this Court should order IDFPR to comply with the subpoena.

## BACKGROUND

Plaintiff brought this civil rights lawsuit under 42 U.S.C. § 1983 against Wexford Health Sources ("Wexford") and its employees, including Doctors George Duncan and Percy Meyers (the "Physician Defendants"), as well as Nurses Candice Davis, Amber Braun, Carol Mansfield, and Tiffany Martz. This case concerns whether Defendants were deliberately indifferent to Jeffrey Eastman when they ignored his symptoms of severe chest pain for days and refused to provide him the medical care he needed, resulting in his death from an aortic dissection. Current Seventh Circuit precedent requires Plaintiff to satisfy the standards of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), which requires her to prove that Wexford maintained infirm policies or practices, or that it unconstitutionally failed to supervise and/or discipline its employees, either of which caused the violation of Mr. Eastman's constitutional rights. In her Amended Complaint, Plaintiff has alleged both theories of *Monell* liability. *See, e.g.,* Dkt. 28 ¶¶ 37-43.

Key for purposes of this motion, Dr. Duncan and Dr. Myers failed to treat Mr. Eastman when faced with his symptoms of a cardiac emergency. Dr. Duncan, the on-call physician for Taylorville at the time, never examined Mr. Eastman or ordered his transfer to a hospital. Instead,

after fielding calls on Mr. Eastman's medical condition, Dr. Duncan admitted him to the infirmary, prescribed him a Motrin, and ordered EKGs to be performed despite knowing that an EKG would *not* be able to rule in or out multiple causes of Mr. Eastman's obvious emergent cardiac symptoms, including the aortic dissection that ultimately caused his death. Worse still, when the EKGs returned abnormal results, Dr. Duncan took no meaningful action, other than to simply order that more EKGs be taken over the course of several hours.

Mr. Eastman was then taken to Dr. Myers to be seen prior to discharge from the prison's infirmary. Despite knowing that Mr. Eastman had recently reported hallmark symptoms of a cardiac emergency, Dr. Myers spent only a few minutes with Mr. Eastman and did not even physically examine him or have his vital signs measured. Instead, he simply prescribed Mr. Eastman an over-the-counter heartburn medication and discharged him from the infirmary to the general population area of the prison. Mr. Eastman died less than two days after his discharge of an aortic dissection that the forensic pathologist determined had occurred multiple days earlier.

Given Plaintiff's claims that Defendants were deliberately indifferent to Mr. Eastman's serious medical condition and that Wexford was on notice and failed to discipline or supervise Defendants and other employees engaging in such misconduct—instead encouraging the type of misconduct at issue—complaints regarding Dr. Duncan and Dr. Myers are critical evidence. They are also squarely relevant to the questions of both liability and punitive damages for the Physician Defendants directly. Accordingly, Plaintiff issued a subpoena to IDFPR, seeking all documents related to Defendants in this case. On January 30, 2025, Plaintiff's counsel conferred with IDFPR and agreed to narrow the request to complaints and investigations, disciplinary history, and settlements. IDFPR responded that a search had yielded no responsive records and that pursuant to the Illinois Medical Practice Act, all information gathered by IDFPR on any of the Defendants

is confidential and not subject to disclosure. Ex. 1 (02.05.2025 Letter from G. Payton). Plaintiff's counsel requested a privilege log to identify what documents IDFPR was withholding pursuant to the Illinois Medical Practice Act, and by March 19, 2025, IDFPR tendered its first privilege log. This log was insufficient as it did not describe any of the documents being withheld. Plaintiff's counsel requested a revised privilege log and conducted a meet and confer on April 23, 2025 to discuss the privilege log, and the inapplicability of asserting the state-law privilege in this federal lawsuit in general. During this conference, counsel for IDFPR agreed that federal law preempts the state law privilege but maintained that it is IDFPR's position to require a court order to produce the documents.

On May 1, 2025, IDFPR provided a revised response, stating that they had found no records related to Defendants Davis, Braun, Mansfield, and Martz, but had discovered responsive records for Defendants Myers and Duncan. Ex. 2 (05.01.2025 Letter from G. Payton). This time, however, the privilege log identified records withheld for George Duncan, licensed dentist, rather than George Duncan, licensed physician. One more time, Plaintiff's counsel asked IDFPR to revise the privilege log, with the correct individual included. Finally, on May 20, IDFPR produced the final version of its privilege log with the correct individuals and identified the types of documents being withheld. All told, IDFPR has identified 26 complaints, which include investigatory documents and reports, against Dr. Myers and three against Dr. Duncan in its privilege log. Following the amended response, Plaintiff's counsel confirmed they were at an impasse with IDFPR. This motion follows.

## LEGAL STANDARD

"The scope of material that may be sought through a subpoena is as broad as the scope of discovery generally allowed in a civil proceeding." *Cady v. Superior Pool Prods., LLC*, No. 13-

cv-1533, 2014 WL 6461393, at *1 (C.D. Ill. Nov. 18, 2014). As a result, Plaintiff's subpoena is proper as long as it seeks "any non-privileged relevant information," meaning any information that "appears reasonably calculated to lead to discovery of admissible evidence." *Id.* (citing Fed. R. Civ. P. 26(b)(1)).

Where a subpoenaed party invokes a claim of privilege and withholds documents, the subpoenaed party bears the burden both of showing that the privilege exists and demonstrating its applicability to the materials withheld. *See Slaven v. Great American Ins. Co.*, 83 F. Supp. 3d 789, 797 (N.D. Ill. 2015) ("the burden is on the party seeking to withhold material from discovery to demonstrate by competent evidence and with particularity" that the claimed privilege applies).

## ARGUMENT

### I.    Complaints Against the Physician Defendants Are Relevant to Plaintiff's Section 1983 Claims

The complaints filed against the Physician Defendants, and the accompanying investigatory and report documents within IDFPR's possession, are centrally relevant to Plaintiff's case. Plaintiff's request for these complaints was "reasonably calculated to lead to discovery of admissible evidence," given that the complaints are likely to contain other instances in which the Physician Defendants failed to adequately examine and treat patients in their care. *Cady*, 2014 WL 6461393, at *1. That evidence, in turn, could speak to the Physician Defendants' consistent indifference to patients' serious medical needs. If sufficiently similar to those at issue in Plaintiff's case, the Physician Defendants' past acts as described in these complaints "could make it more likely that [they] had the intent, opportunity, preparation or plan" to disregard and fail to treat Mr. Eastman's serious medical need here. *DeLeon-Reyes v. Guevara*, No. 18-cv-01028, 2020 WL 1429521, at *4 (N.D. Ill. Mar. 18, 2020). And there is no question that complaints of conduct post-dating the events at issue in this case are relevant to the question of whether and at what quantum

punitive damages should be imposed on them. *See, e.g.,* 7th Cir. Pattern Jury Instr., No. 7.28 (noting that "[i]n determining the amount of any punitive damages, you should consider the following factors[,]" including "the likelihood that Defendant would repeat the conduct if an award of punitive damages is not made"). ████████████████████

████████████████████████████████

████████████████████████

The complaints are also relevant to Plaintiff's *Monell* claim against Wexford. Among other things, IDFPR's documents are likely to support Plaintiff's claim that Wexford was aware of its practitioners' inadequate provision of healthcare within the facilities Wexford operates, but failed to take action to either discipline or supervise the Defendant Physicians, or to otherwise take meaningful action to ensure that individuals under Wexford's care did not receive inadequate treatment.

This evidence factors into what Plaintiff must prove to succeed on her Section 1983 claims, namely that (1) the Physician Defendants were deliberately indifferent to Plaintiff's emergent cardiac symptoms; and (2) Wexford was on notice that the Physician Defendants were providing inadequate medical care to patients and responded with deliberate indifference. Because they are likely to yield crucial admissible evidence, the subpoenaed complaints are relevant.

## II.    The Medical Practice Act's Confidentiality Provision, a State-Granted Privilege, Does Not Apply in this Federal Case

The Medical Practice Act, a state-created privilege, does not protect the complaints and other investigative materials from disclosure in this federal case. It is well-established that courts apply federal evidentiary privileges, rather than state-granted privileges, to claims that arise under federal law. *See* Fed. R. Evid. 501; *Hamdan v. Indiana Univ. Health North Hosp., Inc.*, 880 F.3d 416, 421 (7th Cir. 2018) ("federal courts apply the federal common law of evidentiary privileges—

not state-granted privileges—to claims . . . that arise under federal law"). This remains true even where there is a pendent state law claim. *Memorial Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981) (district court was not required to apply state law privilege to federal case with a pendent state law claim because "it would be meaningless to hold the communication privileged for one set of claims and not the other").

Evidentiary exclusion privileges, like this one, are disfavored because they inhibit the fact-finding purpose of discovery and are therefore circumscribed when they are recognized. *Shadur*, 664 F.2d at 1061. IDFPR may contend, however, that the Seventh Circuit has provided a narrow exception for courts to recognize state privileges. In deciding to recognize a state privilege, a court must "weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that the recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Id.* at 1061-62.

Notably, virtually every federal court to have considered this question has declined to recognize a federal privilege analogue to the Medical Practice Act (or its equivalent in other states). *See, e.g., Hamdan*, 880 F.3d at 421; *Shadur*, 664 F.2d at 1061; *Agster v. Maricopa Cty.*, 422 F.3d 836, 839 (9th Cir. 2005); *Daniels v. Jeffreys*, 683 F. Supp. 3d 854, 861 (C.D. Ill. 2023); *Jackson v. Wexford Health Sources, Inc.*, No. 20-cv-00900, 2023 WL 4352068, at *5 (S.D. Ill. July 5, 2023); *Green v. Meeks*, No. 20-cv-00463, 2023 WL 1447817, at *3 (S.D. Ill. Feb. 1, 2023); *Ramey v. Salazar*, No. 16-cv-00293, 2018 WL 703431, at *3 (W.D. Tex. Feb. 2, 2018); *Bost v. Wexford Health Sources, Inc.*, No. 15-cv-3278, 2017 WL 3084953, at *4 (D. Md. June 19, 2017); *Johnson v. Cook Cnty.*, No. 15-cv-00741, 2015 WL 5144365, at *3-5 (N.D. Ill. Aug. 31, 2015); *McLaughlin v. Tilden*, No. 13-cv-1600, 2015 WL 888921, at *2 (C.D. Ill. Feb. 27, 2015); *Grabow v. Cnty. Of Macomb*, No. 12-cv-10105, 2013 WL 3354505, at *9 (E.D. Mich. July 3, 2013); *Veith v. Portage*

*Cty.*, No. 11-cv-2542, 2012 WL 4850197, at *2 (N.D. Ohio Oct. 12, 2012); *Jenkins v. Dekalb Cty.*, 242 F.R.D. 652, 659 (N.D. Ga. 2007).

IDFPR does not meet the requirements for recognizing a federal equivalent to the Medical Practice Act privilege here. Plaintiff's claims arise under a federal statute, 42 U.S.C. § 1983, and thus federal common law governs the application of privileges in this case. IDFPR has not staked out the importance of the policy that is furthered by the Act's confidentiality provision. But even if it were to do so, that policy would not outweigh the need for truth in the factual context of this case. Courts have recognized that "the balance between federal and state interests is skewed when individualized civil rights are implicated. *Daniels*, 683 F. Supp. 3d at 861. In *Daniels*, the court declined to recognize the Illinois Medical Studies Act peer review privilege in a prisoners' rights case, finding that the plaintiff's need for evidence of the defendants' constitutionally inadequate care outweighed the state's interest in furthering improved candor among medical staff. *Id.* at 863-64. So too here, these complaints hold significant potential to shed light on the Physician Defendants' deliberate indifference to prisoners in their care, as well as Wexford's awareness of these providers' inadequate treatment. Plaintiff's need for these complaints outweighs the state interest behind the Medical Act's confidentiality provision. This Court should reject IDFPR's arguments suggesting otherwise.

## CONCLUSION

For the reasons discussed, this Court should order IDFPR to comply with Plaintiff's subpoena and produce the responsive documents and materials.

8

Respectfully Submitted,

**JANET BEPPLER**

By:  Annie Prossnitz

Sarah Grady
David Schmutzer
Annie Garau Kelly
Amelia Caramadre
Annie Prossnitz
Kaplan & Grady
2071 N. Southport Avenue, Ste. 205
Chicago, IL 60614
(312) 852-2184
prossnitz@kaplangrady.com

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that the foregoing document was electronically served on all counsel who have filed appearances in this case via the Court's CM/ECF system on June 30, 2025.

/s/ Annie Prossnitz